**Entered on Docket
April 1, 2026**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: April 1, 2026**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 25-30262-DM |
| ANNE M. CUMMINGS, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| | ) Trial held |
| | ) Date:  March 23, 2026 |
| | ) Time:  10:00 AM |
| | ) Place: Courtroom 17 |
| | )        450 Golden Gate Avenue |
| | )        16th Floor |
| | )        San Francisco, CA |
| | ) |

**MEMORANDUM DECISION ON VALUATION OF REAL PROPERTY**

**I.   INTRODUCTION**

On March 23, 2026, the court conducted an evidentiary hearing on the motion of debtor Anne M. Cummings ("Debtor") to value her real property (the "Property") where she resides in Greenbrae, California.  James E. Till, Esq. appeared for Debtor; Amanda N. Ferns, Esq. appeared for creditor Navitas Credit Corp ("Navitas").  During the trial, the court heard evidence from Debtor's expert, Brian Rapela, and from Navitas' expert, Paula Saling.  For the reasons explained below, the court fixes the value of the Property as of the petition date and as of the date

-1-

of the concurrently issued order, at $1,735,000. Accordingly, Navitas' lien does not impair the Debtor's homestead exemption and Debtor is not entitled to strip any part of that lien or otherwise treat any part of the lien as an unsecured claim in her pending proposed, contested Chapter 11, Subchapter V plan. It will hold a fully secured claim under that plan.

## II. PROCEDURAL BACKGROUND

Debtor filed under Subchapter V of Chapter 11 on April 2, 2025. In her sworn Schedules, filed on April 16, 2025 (Dkt 17) she stated that the Property had a value of $1,865,000. She added that the source of value was an appraisal for a divorce.

Debtor claimed senior encumbrances on the Property of a first deed of trust held JP Morgan Chase Bank NA ("Chase") in the amount of $598,973 and Marin County real property taxes in the amount of $9,498.83.

Among her secured claims in Schedule D, she listed Balboa Capital Corporation ("Balboa"), with a claim of $281,606.21; she did not indicate any value of collateral securing Balboa's claim. In that same portion of the Schedule, she listed Navitas as owed an amount of $204,576.21 but, as with Balboa, did not set forth any value of collateral securing that claim.

In Schedule C, "Property Claimed as Exempt", she listed her exemption on the Property in the amount of $722,502. That claim of exemption has never been challenged in this Chapter 11 case.

On July 1, 2025, she filed her Chapter 11 Subchapter V Plan (Dkt 36). In her plan, she stated a fair market value of the Property as $1,585,250 and listed classes 2A, 2B, and 2D, *inter alia*, for which classes she indicated that the respective

-2-

individual class member was a secured creditor "to the extent allowed as a secured claim under § 506 of the Code." [1]

More specifically, the plan listed Chase's secured claim of $613,691.43 and Balboa's as $122,237 (secured), with $159,369 (unsecured). The plan did not mention the Marin County secured tax claim of $9,498.83. For Navitas, the plan stated that its claim, then at $212,949.26, would be wholly unsecured. Debtor's own numbers reveal, however, that Navitas would still be partially secured despite her statement to the contrary.

On August 1, 2025, Navitas filed an objection to confirmation (Dkt 39), alleged that its secured claim was now $212,949.26 as of the petition date, and indicated in the objection that Debtor had stated that she intended to file a "section 506(a) Motion to strip lien" which would leave Navitas as an unsecured creditor. Navitas' objection repeated the value of the Property as originally scheduled by the Debtor ($1,865,000), the amount of the Chase lien ($613,691), the homestead exemption ($722,502), and a proof of claim filed by Balboa in the amount of $281,606.21. Based upon those numbers, Navitas contended that at the minimum there was value of $247,209.79, leaving its claim secured or partially secured. Navitas also objected to the unsupported lower value set forth in the plan, notwithstanding the higher value listed in Debtor's Schedules.

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

-3-

On August 4, 2025, Debtor filed a Notice of Settlement with Balboa Capital (Dkt 41). In that document, Debtor described an agreement with Balboa where it would receive $50,000 upon confirmation of the Amended Plan, $100,000, payable monthly over five years, with the balance of Balboa's claim treated as an unsecured claim. Given that agreement on its face, the court considers it as a treatment of a Balboa claim as secured in the amount of no more than $150,000.

On August 27, 2025, Debtor filed an Amended Chapter 11 Subchapter V Plan (Dkt 44) (the "Plan"). In the Plan, she repeated her treatment of Chase in the same amount indicated above, clarified that Balboa would have a secured claim in the amount of $150,000 and an unsecured claim of $131,606.21, and that Navitas' secured claim would be the subject of an adversary proceeding to avoid the lien as a preferential transfer or to file a "section 506(a) motion to strip any lien".

Unsurprisingly, Navitas objected again (Dkt 50), this time adding that its judgment had been recorded prior to the ninety-day preference period that Debtor referred to in her previous filing. It repeated its objection that even with the Balboa lien allowed at $281,606, Navitas' secured claim was partially secured, based upon Debtor's sworn Schedules and valuation. Navitas apparently overlooked the Balboa settlement again as the correct number for its secured claim at that time was $150,000.

The matter came on for contested confirmation on September 12, 2025, and the court deferred consideration of confirmation until resolution of the dispute between Debtor and Navitas regarding the value of the Property.

-4-

On October 31, 2025, Debtor filed a Motion to Avoid a Judicial Lien Under Section 522(f) (Dkt 65) and supported that motion with a declaration of a real estate broker (not an appraiser) supporting a value of the Property of $1,559,000.

Not surprisingly again, Navitas objected (Dkt 83) by taking issue with the change in valuation of the Property from the original Scheduled amount to the later lower amount and raising other issues that are not relevant to the valuation question.

The court held a hearing on January 21, 2026 and scheduled trial on the valuation for March 23, 2026. On February 27, 2026, Mr. Rapela, for Debtor, filed his expert report, contending that the Property had a value of $1,650,000 as of the petition date. Ms. Saling, for Navitas, filed her expert report on March 2, 2026 (Dkt 95), asserting a value of $2,015,000 as of the petition date. Despite the circuitous route traveled, and the bouncing ball of differing appraisals by the Debtor, the single issue is the fair market value of the Property.

## III.   DETERMINATION OF VALUE OF PROPERTY[2]

Both Mr. Rapela and Ms. Saling are licensed appraisers in good standing in the State of California and demonstrated the requisite training, qualifications and experience to offer expert testimony regarding the value of the Property. Neither side objected to the court's consideration of their declarations and accompanying reports. The court concurs and accepts their written and oral expert testimony.

---

[2]  The following discussion constitutes the court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052(a).

-5-

Ms. Saling has over thirty years of experience, largely in connection with single family residence appraisals for various purposes. At least half of her experience over those years is regarding real property in Marin County.

Mr. Rapela has far more experience in commercial or multi-family real property appraisals and a relatively small amount of his experience is with appraisals of single family residences anywhere, including Marin County.

A significant difference between their opinions has to do with their selection of properties that they regard as comparable to the Property for their appraisals. Ms. Saling only identified three comparables, including one literally around the corner from the Property. The problem with her comparables, however, is that all three of the sales she considered were more than six months prior to the petition date of April 2, 2025. In fact, the comparable "just around the corner" closed on August 15, 2024, nearly eight months before that date. There have been numerous sales of single family residences much closer in time in Greenbrae in the neighborhood of the Property, as shown by Mr. Rapela, so Ms. Saling either ignored or rejected them. Without knowing the reasons why, the court cannot consider her older comparables as credible or reliable for making an accurate finding for the petition date value.

Mr. Rapela used five comparables nearby in Greenbrae. The first two closed only weeks or days prior to the petition date; the other three closed within three months after the petition date. Thus, the bases for his value conclusions are far more

-6-

credible than Ms. Saling's and will be considered. Under these circumstances, the court will focus on Mr. Rapela's analyses in making the fact finding necessary to conclude this dispute.

The court takes issue with a few of Mr. Rapela's adjustments to the comparables as set forth in his Improved Sales Adjustment Grid (p. 73 of 89, Dkt 93).

First, he makes a downward adjustment of $25,000 based upon his conclusion that the Property has two and one-half bathrooms in contrast to the three bathrooms reported by Ms. Saling. The court has reviewed the photographs presented by both appraisers and clearly can see visual proof that all three bathrooms at the Property are full bathrooms, not half-baths, and therefore a downward adjustment based upon half a bathroom is not appropriate.

Next, in discussing the topography of the Property and the comparables, he appears to make a downward adjustment of $107,000 based upon comparable #2's price without any meaningful explanation or justification other than what appears to be "sloped" for the Property and "flat" for comparable #2. While there is no question that the difference justifies some adjustment, there is no persuasive evidence to support such a large downward adjustment.

To make it more confusing for the court, in the few small photographs provided by Mr. Rapela, comparable #1 does not appear to be sloped, nor does #5. Even #3's position near trees perhaps gives away its topography, but not for certain. The court will adjust the final valuation of the Property upward somewhat for this reason.

-7-

Next, in his Price/Unit Method Conclusion (p. 74 of 89, Dkt 93), Mr. Rapela mentions the recent capital required to cure major cracking in the driveway and elsewhere on the Property. He adds that a buyer would "consider possible future erosion due to the Property sitting above the Greenbrae Creek." Without quantifying that speculation, his concluding sentence then arrives at a value of $1,650,000, an amount that appears in part to include some speculation that he engages in.

For all of this, the court believes that a proper value increase of $85,000 (half bath; topography; speculation about future expenditures) is appropriate, resulting in a valuation of $1,735,000.

IV. **LEGAL ISSUES**

   **A. Section 522(f).**

Debtor's Motion to Avoid Judicial Lien was styled as a proceeding under § 522(f), a provision that permits a debtor to avoid a lien to the extent it impairs an exemption. *In re Hanger*, 217 B.R. 592 (9th Cir. BAP 1997), *aff'd by In re Hanger* 1999 U.S. App. LEXIS 30403 (9th Cir. 1999). Pursuant to Section 522(f)(2)(A), "a lien shall be considered to impair an exemption to the extent that the sum of--

   (i)    the lien;

   (ii)   all other liens on the property; and

   (iii)  the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that that debtor's interest in the property would have in the absence of any liens."

Case: 25-30262   Doc# 110   Filed: 04/01/26   Entered: 04/01/26 15:49:52   Page 8 of 11

*See also In re Hanger*, 217 B.R. at 595.  Pursuant to Section 522(a)(2), "'value' means fair market value as of the date of the filing of the petition."

Given that Balboa has agreed that, for confirmation purposes, its lien is $150,000, the formula for whether the Navitas lien impairs Debtor's Homestead exemption is:

| The sum of: | Navitas Lien | $212,949.26 |
| | All other liens | JP Morgan Chase, $613,691 |
| | | Balboa, $150,000 |
| | | Marin County Tax Assessor, $9,498.83 |
| | Homestead Exemption | $722,502.00 |
| | TOTAL: | $1,708,641.09 |

The *Hanger* decision instructs trial courts to compare the value of the property claimed exempt with the total determined in this manner.  If the result is a positive number, as it is here ($1,735,000 - $1,708,641.09 = $26,359), there is no impairment.  Debtor's exemption is fully intact.

This means that only Debtor's current asserted valuation of $1,650,000 would result in an impairment of her exemption and thus would result in Navitas' lien being partially stripped. Debtor's originally scheduled $1,865,000 and Navitas' valuation of $2,015,000 would each result in no impairment of the homestead exemption.

**B. Section 506(a)**

To complete the analysis on the present record that includes Balboa's agreed treatment as partially secured and partially unsecured, and assumes the Plan, or a variation of it, will be confirmed, the court proceeds as the Debtor originally contended, namely, through the § 506(a) lens that enables the

-9-

court to value property "in light of the purposes of the valuation and the proposed disposition or use of such property." Thus, it is also necessary and appropriate to fix a value of the Property for purposes of resolving the contested confirmation that should only be weeks away. This procedure, which is endorsed by Fed. R. Bankr. P. 3012, enables the court to "determine the amount of a secured claim under § 506(a)." It is necessary in addition to resolving the Section 522(f) issue because the Plan needs to be analyzed as of the likely confirmation date in the near future.

At the trial on March 23, 2026, the court asked each appraiser whether his or her valuation would vary between that determined as of the petition date or the date of the trial. Mr. Rapela opined that it would generally be the same; Ms. Saling did not opine one way or the other.

The parties originally briefed and prepared this matter as a motion under § 522, but Debtor, in her Trial Brief (Dkt 100), cited only § 506. Navitas argued (Dkt 103) that its lien could be avoided only to the extent of any proven impairment.

Based upon the statements of the two appraisers and absence of any persuasive evidence that the court's determination either as of the petition date or the trial date would be different, the court treats its valuation as the same for the petition date and the confirmation date in the very near future. For the reasons stated above, the court is concurrently issuing an order consistent with this Memorandum Decision that fixes the value of the Property for purposes of this Chapter 11 case and the pending Plan, both as of April 2, 2025 and at present under the

-10-

Plan, at $1,735,000. If confirmation is denied, or the Plan revised to alter the amount of the secured portion of the Balboa claim, thus impacting the junior Navitas lien, the court may need to revisit the Section 522(f) determination.

## V.    CONCLUSION

The court will hold a status conference in this case on **April 24, 2026, at 10:00 A.M.** via Zoom. One week prior, Debtor is directed to file an amended Plan, consistent with the value of the Property fixed by this decision. Prior to the conference, counsel for Debtor and for Navitas should meet and confer about remaining unresolved confirmation issues between them and the time the court should set for the contested confirmation hearing.

*** END OF MEMORANDUM DECISION ***

-11-